UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LORENZO DONNELL RELERFORD, Jr.,

    Petitioner,                                    Civil No. 2:18-CV-12654
                                                      HONORABLE VICTORIA A. ROBERTS
v.                                          UNITED STATES DISTRICT JUDGE

RANDEE REWERTS,

    Respondent,
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS*

Lorenzo Donnell Relerford, Jr., ("Petitioner"), confined at the Chippewa Correctional Facility in Kincheloe, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction for first-degree felony murder, M.C.L.A. 750.316(1)(b), armed robbery, M.C.L.A. 75.529, and unlawfully driving away an automobile. M.C.L.A. 750.413.

For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

A jury convicted Petitioner in Genesee County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F. 3d 410, 413 (6th Cir. 2009):

> On the morning of March 10, 2011, Jeanne Hank was found lifeless in her Grand Blanc apartment, strangled to death with the cloth belt of her bathrobe.

1

The cord for Hank's landline telephone had been ripped from the wall and her cellular telephone was missing. Her home had been ransacked and several items of jewelry and electronics were gone. Hank's Trailblazer also was not in the parking lot. Later that day, police spotted Hank's Trailblazer at a local gas station. Officers descended upon the vehicle and arrested Relerford, who was driving the vehicle, as well as his passenger, Dantoine Brown. Inside the vehicle, the officers found Hank's television, DVD player, laptop, and jewelry. Brown carried Hank's cell phone in his pocket. The officers also found a BB gun and a knife. Later investigation revealed that Relerford and Brown had travelled to local pawn shops and unsuccessfully attempted to sell the stolen items.

Relerford and Brown shifted blame onto the other for Hank's death. Relerford claimed that he had known Hank for a week and insisted that she gave him her property to sell so he could buy her drugs. To facilitate this errand, Relerford asserted, Hank loaned him her vehicle. At trial, Relerford's theory was that Brown acted alone in killing Hank, and that Relerford was merely present.

Brown later pleaded guilty to involuntary manslaughter and armed robbery in exchange for a 10–year minimum sentence and his agreement to testify against Relerford. In March 2012, a jury convicted Relerford of felony murder, armed robbery, and UDAA. This Court reversed Relerford's convictions and remanded for a new trial because Relerford was placed in shackles that were visible to the jury despite that the trial court never considered whether Relerford posed a security risk. *People v. Relerford (After Remand)*, unpublished opinion per curiam of the Court of Appeals, issued November 19, 2013 (Docket No. 310488). Relerford's second trial ended with a hung jury. A jury again convicted Relerford of felony murder, armed robbery, and UDAA after his third trial. He now appeals those convictions.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

At Relerford's original trial, Brown testified against him in accordance with his plea agreement. Brown asserted that Relerford picked him up on the morning of March 10, 2011, driving a Trailblazer. Relerford took Brown to Hank's apartment. Brown described Hank as friendly and corroborated Relerford's claim that Hank gave him her laptop. Things turned sour, however, and Relerford pushed Hank toward Brown and Brown volleyed her back. Brown accused Relerford of placing Hank in a chokehold and instructing Brown to rip the phone cord from the wall and to steal Hank's television and DVD player. Brown returned to the Trailblazer ahead of

Relerford. Relerford came out three to five minutes later and told Brown, "Bitch is gonna quit pissing me off" and that he "had to choke her out." Brown believed this meant Relerford had killed Hank.

Brown refused to testify at Relerford's second and third trials. Brown was brought to court for questioning before Relerford's second trial and given an attorney for consultation. On the stand, Brown iterated that he would not testify, even if it resulted in vacation of his plea agreement and resentencing under harsher terms. The only reason Brown would give for his refusal was that he had already testified in this matter and the plea agreement did not require him to testify twice. The court deemed Brown unavailable to testify and someone read Brown's original testimony into the record. Ultimately, however, the jury could not agree on a verdict.

Before Relerford's third trial, the court assigned an attorney to advise Brown. When Brown was brought to the courtroom, he was uncooperative from the first. In response to the court attempting to place him under oath, Brown indicated that he would tell the truth, "But I ain't going to be no testimony." Brown conceded his awareness that his plea agreement could be revoked and he could face a longer prison term if he breached the agreement and refused to testify. Brown declined to give a reason for his decision:

Mr. Brown. 'Cause I'm not.

[Prosecutor]. Do you have any basis for that?

Mr. Brown. That is my basis, 'cause I'm not. I don't owe no explanation to nobody.

The court again deemed Brown unavailable to testify and permitted the prosecutor to have someone read the transcript of Brown's original trial testimony into the record.

*People v. Relerford*, No. 327040, 2016 WL 6037623, at *1–2 (Mich. Ct. App. Oct. 13, 2016).

Petitioner's conviction was affirmed. *Id., lv. den.* 500 Mich. 1002, 895 N.W. 2d 179 (2017).

Petitioner seeks a writ of habeas corpus on the following grounds: (1) the trial court violated Petitioner's right to confrontation by declaring co-defendant Brown unavailable and admitting his testimony from Petitioner's first trial, (2) the trial judge violated Petitioner's right to present a defense by refusing to inform the jury that Brown refused to testify at Petitioner's third trial and preventing defense counsel from commenting on Brown's absence and instead instructed the jurors that they were not to consider Brown's absence in determining his credibility, (3) the trial judge violated Petitioner's right to present a defense by refusing to instruct on duress as a defense, and (4) trial counsel was ineffective for failing to admit prior testimony from a jailhouse informant that Petitioner denied killing Ms. Hank.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.,* at 103. Habeas relief should be denied as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

### III. Discussion

**A. Claim # 1. The unavailable witness/Confrontation Clause claim.**

Petitioner claims that the trial judge erred in declaring Mr. Brown unavailable to testify at his second and third trials, when Mr. Brown refused to testify. Petitioner argues that the prosecutor could have made Mr. Brown available by threatening to revoke his

5

plea agreement. Petitioner argues that the admission of Mr. Brown's testimony from the first trial violated the Sixth Amendment right to confrontation.

The Michigan Court of Appeals rejected the claim:

> Relerford's challenge lacks merit. Had the prosecution revoked Brown's plea agreement, Brown likely still would have been unavailable to testify. Revocation of the plea agreement would have led to reinstatement of the criminal charges against Brown. Brown could then assert his Fifth Amendment privilege and refuse to testify, rendering him unavailable under MRE 804(a)(1). [1] 1 Because the prosecutor could not force Brown to testify even by revoking his plea agreement, the prosecutor's failure to do so cannot be deemed a cause of Brown's absence.
>
> Relerford additionally argues that the admission of Brown's testimony violated his constitutional right of confrontation. However, "[t]he admission of former testimony tested by cross-examination generally comports with the requirements of the Confrontation Clause." Brown testified at the first trial and was available for cross-examination. Relerford had the same opportunity and motive to develop Brown's testimony at his first trial as he had at his third. Accordingly, the admission of Brown's former testimony did not violate Relerford's constitutional rights.

*People v. Relerford,* No. 327040, 2016 WL 6037623, at * 3 (internal citations omitted).

The Confrontation Clause prohibits the admission of testimonial statements by a non-testifying witness unless the witness is unavailable and the defendant had a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). An exception to the confrontation requirement exists where a witness is unavailable and gave

---

[1] From Brown's comments on the record before the second and third trials, it appears that Brown may have been trying to provoke the prosecution into revoking his plea agreement. Brown's state and federal applications for leave to appeal had been denied and this may have been Brown's plan to secure a trial. (Footnote original).

6

testimony at previous judicial proceedings against the same defendant which was subject to cross-examination. However, this exception does not apply "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968). The lengths to which the prosecution must go to produce a witness, such that the admission of the witness' prior, confronted testimony at subsequent trial does not violate the Confrontation Clause, is a question of reasonableness. *Hardy v. Cross,* 565 U.S. 65, 70 (2011)(*quoting Ohio v. Roberts*, 448 U.S. 56, 74 (1980)).

Mr. Brown testified at Petitioner's first trial and was subject to cross-examination by Petitioner's counsel. The prosecutor brought Mr. Brown to court for Petitioner's second and third trials. Mr. Brown refused to testify at these trials.

A witness is considered unavailable for full and effective cross-examination, for purposes of the Confrontation Clause, when he or she refuses to testify. *See California v. Green,* 299 U.S. 149, 167-68 (1970). This is so even when the refusal to testify is punishable by contempt. *See Green v. MacLaren*, No. 17-1249, 2017 WL 3973956, at * 2 (6th Cir. Aug. 2, 2017)(*citing United States v. Bourjaily*, 781 F.2d 539, 544 (6th Cir. 1986); *Mayes v. Sowder*s, 621 F.2d 850, 855 (6th Cir. 1980)). The prior testimony of a witness who refuses to testify is admissible unless the prosecutor sought to prevent the witness from testifying. *See United States v. Licavoli*, 725 F.2d 1040, 1048 (6th Cir. 1984). There is no indication that the prosecutor sought to prevent Mr. Brown from testifying; the prosecutor subpoenaed him for the second and third trials and attempted to call him as a witness. The Michigan Court of Appeals reasonably concluded that Mr. Brown was unavailable to testify at Petitioner's second and third trials.

7

Finally, the admission of Mr. Brown's testimony from Petitioner's first trial at Petitioner's third trial when Mr. Brown refused to testify did not violate Petitioner's right to confrontation; Petitioner had a full opportunity to cross-examine Mr. Brown at the first trial. *See Blackston v. Rapelje,* 907 F. Supp. 2d 878, 897–98 (E.D. Mich. 2012). Petitioner is not entitled to relief on his first claim.

### B. Claims # 2 and # 3. The right to present a defense/instructional error claims.

Petitioner in his second claim argues that the judge should have instructed the jurors for Mr. Brown's reason for refusing to testify or at least permit defense counsel to argue that Mr. Brown's refusal to testify was a factor the jurors could consider in evaluating his credibility. In his third claim, Petitioner argues that the judge erred in refusing to instruct the jurors on a duress defense.

A defendant in a criminal trial has the right to "a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984). "[A] necessary corollary of this holding is the rule that a defendant in a criminal trial has the right, under appropriate circumstances, to have the jury instructed on his or her defense, for the right to present a defense would be meaningless were a trial court completely free to ignore that defense when giving instructions." *See Taylor v. Withrow,* 288 F.3d 846, 852 (6th Cir. 2002). A defendant is entitled to a jury instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his or her favor. *Mathews v. United States*, 485 U.S. 58, 63 (1988).

The Michigan Court of Appeals rejected Petitioner's second claim:

> In the alternative, Relerford contends that the trial court should have informed the jury of Brown's reason (or lack thereof) for refusing to testify and allowed defense counsel to argue that Brown's refusal to testify was a factor to consider in evaluating his credibility. As noted, Brown refused to explain his reason for not testifying. He intimated that he wanted the prosecutor to revoke his plea agreement so he could test his odds at trial, but then specifically denied that his failed appeals affected his decision. Accordingly, the most the trial court could have done was to inform the jury that Brown gave no reason for deciding not to testify.
>
> To the extent that Relerford raises an instructional challenge, we discern no error. As noted by the trial court, informing the jury that Brown refused to give a reason for not testifying would have led to speculation. That speculation could have been very prejudicial to Relerford. Individual jurors may have conjectured that Relerford did something to frighten Brown away from court. To prevent this harm, the court repeatedly instructed the jury that it must take a neutral stance as to Brown's absence, holding his absence against neither side. The court's instructions were neutral and balanced, formed an accurate comment on the situation, and were intended to prevent the jury from unfairly holding Brown's unavailability against either party.

*Relerford*, 2016 WL 6037623, at * 3.

The judge in this case instructed the jurors during the jury selection process, during opening statements, and before Mr. Brown's prior testimony was read into evidence that they were not to consider Mr. Brown's absence or speculate about the reason for it. The judge advised the jurors that it was neither side's fault that Mr. Brown was unavailable to testify. (T3 I 50-51; T3 II 169-170; T3 VI 29)(ECF 12-31, PageID 4136-37, ECF 12-32, PageID 4527-28, ECF 12-36, PageID 5182).

The jury instruction in this case did not undercut Petitioner's defense or deprive him of a fair trial because it merely instructed the jurors not to speculate as to the reason why Mr. Brown failed to appear at trial. *See e.g. United States v. Daniel*, 399 F. App'x. 690, 692-93 (2nd Cir. 2010)(district court did not plainly err in instructing jury not to

9

speculate about absence of witnesses, with respect to defendant's trial for misappropriation of postal funds and making false entries and reports of moneys; instruction only told jury not to speculate as to why certain witnesses were not called, and did not diminish government's burden of proof or undermine defense).

Petitioner argues that the judge denied Petitioner a right to present a defense because he refused to allow defense counsel to use Mr. Brown's absence to challenge his credibility.

The Michigan Court of Appeals rejected this claim:

> Just as the trial court declined to inform the jury of Brown's lack of reason for refusing to testify, it precluded defense counsel from doing so. Although counsel may have imagined a defense built around Brown's absence, the court sagely recognized the danger to Relerford in heading down this path.
>
> In any event, the court's instructional and evidentiary decisions did not deprive Relerford of a defense or prevent him from attacking Brown's credibility. The trial court's ruling only prevented Relerford from inviting the jury to speculate on the reason for Brown's unavailability and his unspecified refusal to testify. It did not prevent Relerford from challenging the credibility of Brown's prior testimony on other grounds. During both opening statement and closing argument, defense counsel emphasized that Brown had a strong motive to lie and shift the blame onto Relerford in order to avoid murder charges and a sentence of life imprisonment. In closing, defense counsel pointed to several instances during his testimony when Brown conceded that he had lied under oath. Counsel informed the jury that Brown "said he lied ... about every five minutes or so during that testimony." Under the circumstances, the trial court's narrow ruling preventing disclosure of Brown's reason for refusing to testify was not error and did not result in prejudice.

*People v. Relerford*, 2016 WL 6037623, at * 4.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he or she also has the right to present his or her

own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); *See also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Moreover, under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F. 3d 507, 511-12 (6th Cir. 2003).

The Michigan Court of Appeals upheld the exclusion of evidence concerning the reasons for Brown's absence because such speculation might have been unduly prejudicial to Petitioner, in that the jurors could have believed he was somehow responsible for Brown's refusal to testify. Although the federal constitution "prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina,* 547 U.S. 319, 326 (2006)(citing Fed. Rule Evid. 403; Uniform Rule of Evid. 45 (1953); ALI, Model Code of Evidence Rule 303 (1942); 3 J. Wigmore, Evidence §§ 1863, 1904 (1904)). It was not unreasonable for the state trial court to exclude, as more prejudicial than probative, evidence concerning the reasons why Mr. Brown refused to testify, because this evidence would have created a substantial danger of unfair prejudice, either to the prosecutor or to Petitioner.

Petitioner was prohibited from arguing that the jury should use Mr. Brown's absence to assess his credibility; Petitioner was not prevented from presenting additional evidence or arguments to challenge Mr. Brown's credibility. Arguments concerning Mr. Brown's absence would have been cumulative to other impeachment evidence; the exclusion of this evidence did not violate Petitioner's his right to present a defense. *See Washington v. Renico*, 455 F.3d 722, 728-29 (6th Cir. 2006).

Petitioner argues that the judge failed to instruct on the defense of duress. The Michigan Court of Appeals rejected this claim:

> Duress requires evidence that the defendant participated in the crime and did so to avoid threatened harm. In that circumstance, the defendant's participation is justified by the threatening behavior. Relerford relies on his police statement, in which he asserted that he feared Brown and that Brown pointed a gun at him. However, Relerford never associated Brown's threatening conduct with his participation in any criminal acts. On the contrary, Relerford consistently denied that he participated in any robbery or unlawful taking of Hank's car. He claimed instead that Brown committed the robbery alone, and he affirmatively stated that Hank gave him permission to drive her Trailblazer so no UDAA occurred. And Relerford asserted that Brown did not raise any threat with the gun until they had left the scene and the crimes had already been committed. Accordingly, the trial court did not abuse its discretion in ruling that the facts did not support Relerford's requested duress instruction.

*People v. Relerford*, No. 327040, 2016 WL 6037623, at * 5.

The United States Supreme Court "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Likewise, "[D]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes." *See Lakin v. Stine,* 80 F. App'x. 368, 373 (6th Cir. 2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000); *McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)).

13

Petitioner is not entitled to habeas relief; "states have great latitude in criminal proceedings, including latitude to formulate both the elements of crimes and the defenses to them." *Taylor,* 288 F.3d at 853. Petitioner is not entitled to habeas relief because the Michigan Court of Appeals concluded that under Michigan law, the evidence did not support a duress defense. *Id.* at 853-54. The Court rejects Petitioner's third claim.

### C. Claim # 4. The ineffective assistance of counsel claim.

Petitioner argues he was denied the effective assistance of counsel.

A defendant must satisfy a two prong test to show that he or she was denied the effective assistance of counsel. First, the defendant must demonstrate that counsel's performance was so deficient that the attorney did not function as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id*. The defendant must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his or her defense. *Id*. A defendant demonstrates prejudice by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. The burden is on the defendant who raises a claim of ineffective assistance of counsel, and not on the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)(*quoting Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 562 U.S. at 101. Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 556 U.S. at 123 (*citing Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to the § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself." *Harrington*, 562 U.S. at 101. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 105 (*quoting Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).

> Because of this doubly deferential standard, the Supreme Court indicated that:
>
> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.
>
> *Harrington v. Richter*, 562 U.S. at 105.

15

A reviewing court must not merely give defense counsel the benefit of the doubt; it must affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *Cullen v. Pinholster,* 563 U.S. 170, 196 (2011).

Petitioner claims that trial counsel was ineffective for failing to elicit testimony from jail informant William White that Petitioner denied killing the victim.

The Michigan Court of Appeals rejected Petitioner's claim:

Finally, Relerford contends that defense counsel inadequately cross examined William White, an inmate who claimed to have overheard a jailhouse conversation in which Relerford stated that he used Hank's robe belt to "lay the bitch out." Relerford emphasizes White's testimony at the first trial that he also heard Relerford state, "I put her to sleep" and "I didn't kill her." White then overheard Relerford shift the blame onto his accomplice, asserting, "He must have came back and did somethin' to her because she was still alive when I got done with her."

At Relerford's third trial, White testified that he overheard Relerford say "I had to lay the bitch out" because she would not calm down. On direct, White denied that he heard any other comments made by Relerford that day. On cross, defense counsel interrogated White about his plea agreement. He inquired into the details of White's work detail at the jail when he overheard the conversation and questioned how he could have overheard Releford's conversation. Despite that the same attorney had represented Relerford at the first and third trials, however, he asked no questions to develop the statements overheard by White. Accordingly, the jury in the third trial did not learn that Relerford told a fellow inmate that he did not kill Hank and his accomplice must have gone back to finish the job. The failure to elicit this testimony amounted to ineffective assistance, Relerford contends.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

The defense strategy at Relerford's third trial was to show that White never overheard any conversation in which Relerford discussed his case with another inmate, and that White fabricated the account for his own personal benefit. It would have been inconsistent with this defense strategy to introduce evidence that White did indeed overhear a conversation in which Relerford stated that he did not think he had killed Hank. Moreover, any claim by Relerford that White credibly heard Relerford say that he did not think he had killed the victim would have invited the jury to also credit

16

> White's testimony that he heard Relerford say that he had used Hank's robe belt to "lay the bitch out." Relerford has not overcome the presumption that defense counsel purposely chose not to develop the subject testimony for sound strategic reasons.

*People v. Relerford,* 2016 WL 6037623, at * 5-6.

"Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Dell v. Straub*, 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002). "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Id.*

Counsel's defense strategy at Petitioner's third trial was to attack Mr. White's credibility by attempting to show that Mr. White did not hear any of Petitioner's conversations in jail and did not hear Petitioner make incriminating statements. Counsel was not ineffective in failing to elicit testimony from Mr. White on cross-examination that Petitioner denied killing the victim because this would have been damaging to the defense theory that Mr. White could not have overheard Petitioner's jail conversations. *See Smith v. Woods*, 505 F. App'x 560, 567 (6th Cir. 2012). Petitioner is not entitled to relief on his fourth claim.

### IV. Conclusion

The Court denies the petition for writ of habeas corpus. The Court also denies a certificate of appealability to Petitioner. To obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that

17

reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254; *See also Strayhorn v. Booker,* 718 F. Supp. 2d 846, 875 (E.D. Mich. 2010).

For the reasons stated in this opinion, the Court denies Petitioner a certificate of appealability; he failed to make a substantial showing of the denial of a federal constitutional right. *See Siebert v. Jackson,* 205 F. Supp. 2d 727, 735 (E.D. Mich. 2002).

Although the Court denies a certificate of appealability, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is lower than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002). While a certificate of appealability may only be granted if petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.

Although jurists of reason would not debate this Court's resolution of Petitioner's claims, the issues are not frivolous. Therefore, an appeal could be taken in good faith and Petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V. ORDER

**The Court DENIES** the Petition for Writ of Habeas Corpus and a Certificate of Appealability**.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

s/ Victoria A. Roberts
**HON. VICTORIA A. ROBERTS**
**Dated: 9/26/19**                **UNITED STATES DISTRICT JUDGE**